IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 3, 2015

**STATE OF TENNESSEE v. ROY CHERRY**

**Appeal from the Criminal Court for Shelby County**
**Nos. 10-07060, 10-07809     Paula Skahan, Judge**

---

**No. W2015-01084-CCA-R3-CD  -  Filed February 8, 2016**

---

The defendant, Roy Cherry, appeals the termination of his judicial diversion, arguing that he was denied his fundamental due process right to confront the witnesses against him and that the trial court did not make required findings of fact regarding the evidence it relied on in its decision. Following our review, we affirm the judgment of the trial court terminating the defendant's diversion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Andre B. Mathis, Memphis, Tennessee, for the appellant, Roy Cherry.

Herbert H. Slatery III, Attorney General and Reporter; Rachel E. Willis, Senior Counsel; Amy P. Weirich, District Attorney General; and Shannon McKenna, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On April 12, 2012, the defendant pled guilty in the Shelby County Criminal Court to aggravated burglary, aggravated assault, felony evading arrest, domestic assault, and the unlawful possession of a firearm.  The trial court granted his request for judicial diversion, placing him on diversionary probation for a total period of six years.  On March 25, 2015, the State filed a petition to revoke the defendant's judicial diversion based on his February 20, 2015 arrest for domestic assault.  On May 7, 2015, the State

filed a second petition to revoke the defendant's diversion based on his July 16, 2014 arrest for aggravated assault.

At the beginning of the May 14, 2015 revocation hearing, the prosecutor informed the court that the victim of the aggravated assault had been subpoenaed and apparently had been in court earlier that day but had since left. The prosecutor sought the court's guidance on how to proceed, stating that she could have the witness brought to court by the sheriff's department but that she believed she had enough proof of the defendant's violations through the testimony of two law enforcement officers who were present in court. The trial court opted to go forward at that time with the witnesses they had, noting that they could bifurcate the proceedings if necessary.

Detective Robert Brown of the Memphis Police Department testified that on July 16, 2014, he received a report of an aggravated assault from April DeFell,[1] who came into the precinct to make a complaint against the defendant. Detective Brown identified Ms. DeFell's signed statement and the photographic spreadsheet from which she identified the defendant as her attacker, both of which were admitted as exhibits to the hearing over the hearsay objection of defense counsel. In the statement, Ms. DeFell said that early that morning, the defendant came into the apartment of his child's mother, who was Ms. DeFell's girlfriend, pulled out a silver gun, pointed it at Ms. DeFell, ordered her to leave, and threatened to kill her. Detective Brown testified that Ms. DeFell circled the defendant's photograph, signed her name, date, and the time on the spreadsheet, and wrote beneath the defendant's picture, "This is the guy who pulled the gun on me." On cross-examination, Detective Brown acknowledged that he had no independent knowledge of the defendant's alleged actions.

Officer Ronald Ammons, Jr., of the Memphis Police Department, who responded to a February 20, 2015 domestic violence call involving the defendant and his girlfriend,[2] testified the defendant's girlfriend told him that she and the defendant had gotten into an argument and that the defendant had ripped her jacket off and choked her. He said he asked the defendant if he had ripped the victim's jacket off, and the defendant replied, "I ripped her jacket off, but I didn't choke her." The victim, however, had visible marks on her neck. Officer Ammons and his partner therefore took the defendant into custody. Officer Ammons identified photographs he had taken of the victim's neck, which were admitted as exhibits to the hearing. He acknowledged that no marks were visible on the

---

[1]This individual's name is spelled "DaFell" in the transcript, but she signed her name as "DeFell" in her statement to police.

[2]The prosecutor later identified this woman as "Ms. Fernley" and informed the court that she was apparently avoiding service of process.

victim's neck in the black and white photographs he took but said that he observed an injury to the victim's neck.

Upon questioning by the trial court, the defendant said that he was going to "Dr. Hanley's" for mental health treatment and was currently taking Seroquel, Lexapro, "Ceraline," and "Virsatine" but did not have any proof that he was taking his medication. The trial court then noted that the defendant had a history of prior petitions to terminate his diversion, which were based on a 2013 felony drug charge, his failure to attend domestic violence classes, and his not having reported to a mental health facility. The court further noted that the defendant's past problems stemmed from the fact that he was not taking his prescribed medication:

> Because you had gotten off of your medication, that was one of the problems we went through, is you couldn't afford them, according to you and then you brought me proof that you were back on your medication and seeing a doctor. Something tells me you got off of your medication, again.
>
> You have got serious issues. You have to take your medicine.

The court concluded by revoking the defendant's suspended sentence, finding by a preponderance of the evidence that the defendant had violated the terms and conditions of diversion. The trial court's ruling states in pertinent part:

> Right. And [defense counsel], by all means, I don't have all the answers, but one of the answers for [the defendant], is taking his medication and he won't do it, he just won't do it. And that's, apparently, when he gets in all this trouble.
>
> I do find by a preponderance of the evidence that he has violated the terms and conditions of diversion. He has been given chance after chance after chance. And this is it.

## ANALYSIS

The defendant argues on appeal that by allowing the hearing to proceed without the testimony of the alleged victims, the trial court precluded him from confronting the adverse witnesses against him in violation of his due process rights. He further argues that there was insufficient evidence to support the trial court's finding that he violated the terms and conditions of his diversion and that the court failed to issue required findings in support of its decision. The State argues that the trial court properly admitted reliable hearsay evidence; that any error in admitting the hearsay testimony was harmless because

3

Officer Ammons' testimony about the injuries he observed to the neck of the defendant's girlfriend and the defendant's admission that he assaulted her was sufficient, apart from the hearsay statements of the victims, to support a finding that the defendant violated his diversion; and that the record is clear that the trial court based its decision on the evidence presented by the State of the new offenses the defendant committed.

When addressing a petition to terminate a defendant's diversion, a trial court is to follow the same procedures it uses for probation revocations. Alder v. State, 108 S.W.3d 263, 266 (Tenn. Crim. App. 2002). The trial court may revoke probation upon finding by a preponderance of the evidence that the defendant has violated a condition of probation. Tenn. Code Ann. § 40-35-311(e)(1). The revocation of probation lies within the sound discretion of the trial court. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial court to make a conscientious and intelligent judgment. Harkins, 811 S.W.2d at 82 (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)).

A defendant at a probation revocation proceeding is not entitled to the full array of procedural protections associated with a criminal trial. See Black v. Romano, 471 U.S. 606, 613 (1985); Gagnon v. Scarpelli, 411 U.S. 778, 786-790 (1973). However, such defendant is entitled to the "minimum requirements of due process," including: (1) written notice of the claimed violation(s) of probation; (2) disclosure to the probationer of evidence against him; (3) the opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses (unless good cause is shown for not allowing confrontation); (5) a neutral and detached hearing body, members of which need not be judicial officers or lawyers; and (6) a written statement by the factfinder regarding the evidence relied upon and the reasons for revoking probation. Id. at 786; Morrissey v. Brewer, 408 U.S. 471, 489 (1972).

The defendant first argues that his due process right to confront the witnesses against him was violated by the trial court's admission of the hearsay testimony of the law enforcement officers. The confrontation rights of a defendant at a probation revocation hearing preclude the admission of hearsay evidence unless: (1) the trial court makes a finding that there is "good cause" to justify the denial of the defendant's right to confront and cross-examine adverse witnesses, and (2) there is a showing that

4

information contained in the evidence is reliable. <u>State v. Wade</u>, 863 S.W.2d 406, 409 (Tenn. 1993).

The trial court opted to proceed with the hearing after the prosecutor explained that the aggravated assault victim had left the courthouse and was not responding to the prosecutor's attempts to reach her.[3] The trial court subsequently overruled the defendant's hearsay objection to Detective Brown's testimony after noting that reliable hearsay is admissible in probation revocation hearings. The trial court similarly overruled the defendant's hearsay objection to Officer Ammons' testimony by agreeing with the prosecutor that it constituted reliable hearsay. We agree with the State that, although the trial court did not make a specific finding of "good cause" for the admission of the officers' hearsay testimony, such a finding was implicit in the trial court's words and actions.

We further agree with the State that there was evidence to support a finding that the defendant violated the terms and conditions of his probationary diversion, even apart from the hearsay evidence admitted. As the State points out, Officer Ammons testified that he observed an injury to the neck of the defendant's girlfriend and that the defendant admitted to him that he had "ripped" his girlfriend's jacket off her body. This evidence was more than sufficient for the trial court to find by a preponderance of the evidence that the defendant violated a condition of his probation.

The defendant also argues that the trial court failed to make proper findings regarding the evidence on which it relied to terminate his diversion. The defendant contends that the evidence the State presented of his alleged assaults, which was the basis on which the State petitioned to revoke his diversion, "was utterly insufficient to revoke [his] judicial diversion." He further contends that the only specific finding made by the trial court was that he was not taking his medication, which was not the basis for the State's petitions to revoke and which was a finding that was unsupported by any evidence presented at the hearing. We respectfully disagree.

We, first, observe that oral findings in a transcript may satisfy the "written statement" requirement in probation revocation proceedings. <u>See</u> <u>State v. Leiderman</u>, 86

---

[3]After the testimony of Officer Ammons, the trial court inquired about the status of both cases. The prosecutor informed the court that the domestic assault victim was avoiding service of process, and the trial court noted that both victims had failed to appear at their respective preliminary hearings and that both cases had been dismissed in general sessions court. The court asked whether the cases would be submitted to the Grand Jury, and the prosecutor replied that the case involving Ms. DeFell already had an "AG number." The court responded to defense counsel's argument that there was insufficient proof of the defendant's violations without the testimony of the alleged victims by pointing out that it could simply reset the hearing in order to have the witnesses arrested and brought to court to testify. The court, however, obviously found it unnecessary to do so.

S.W.3d 584, 589-91 (Tenn. Crim. App. 2002). Although the trial court did not specifically state that the defendant violated the terms and conditions of his diversion by his assaults on Ms. DeFell and Ms. Fernley, such a finding is implicit when the court's ruling is read in context of the entire record. The trial court's comments on the defendant's difficulty with his mental health treatment and medication were obviously based on the court's familiarity with the defendant and the State's prior petitions to terminate his diversion and supported the trial court's finding that the defendant had been given "chance after chance, after chance" but that "this [was] it." We, therefore, conclude that the trial court did not abuse its discretion in terminating the defendant's judicial diversion.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court terminating the defendant's judicial diversion.

_____
ALAN E. GLENN, JUDGE